**2019 BNH 003**     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW HAMPSHIRE

In re:                                                                                      Bk. No. 12-11983-BAH
                                                                                             Chapter 13
Terrence P. Kriss,
          Debtor

Terrence P. Kriss,
          Plaintiff

v.                                                                                           Adv. No. 18-01064-BAH

United States of America (IRS),
          Defendant


*Ann K. Barber, Attorney for Plaintiff*

*Jeffrey N. Nuńez, Attorney for Defendant*

### MEMORANDUM OPINION

**I.  INTRODUCTION**

Before the Court is the Motion for Judgment on the Pleadings (the "Motion")[1] filed by the United States of America (the "Defendant" or the "IRS").  The Motion moves this Court to enter a final order or judgment that the liabilities of debtor Terrence P. Kriss (the "Plaintiff" or the "Debtor") for income taxes and interest for the tax years 1997, 2000, 2008, 2009, 2010, 2011, are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(B).  The Defendant also argues it is entitled to judgment regarding the Plaintiff's adversary complaint seeking damages, costs, attorney's fees, and sanctions for a violation of the discharge injunction in 11 U.S.C. § 524(a)(2),

---
[1] (Doc. No. 19).

1

because the Defendant has not waived its sovereign immunity to be sued on those grounds. The Plaintiff timely filed his Objection to the Motion (the "Objection").[2]

After reviewing the papers filed and having heard oral argument, for the reasons set forth herein, the Defendant's Motion is GRANTED in part, and DENIED in part.

## II. JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the United States District Court, District of New Hampshire Local Rule 77.4(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

Both parties have consented to entry of a final order or judgment regarding the dischargeability of tax debts by the bankruptcy court. However, the IRS argues that the Debtor's adversary complaint (the "Adversary Complaint")[3] does not contain jurisdictional allegations sufficient to confer jurisdiction to this Court, and as there has been no waiver of sovereign immunity by the IRS, this Court lacks jurisdiction over the Adversary Complaint as it pertains to an award of damages, attorney's fees and costs and/or sanctions. This jurisdictional issue asserted by the IRS is addressed further in section V.C. of this Order.

## III. FACTUAL[4] AND PROCEDURAL BACKGROUND

### A. Pre-Petition

The Debtor did not file tax returns by the IRS's filing deadline for the income tax years of 1997 or 2000. For the tax year of 1997 the IRS assessed $30,568.00 in taxes, interest and penalties based on a "substitute for return" filed by the IRS on December 31, 2001, a portion of which was abated after the Debtor filed an "amended" 1997 tax return on July 7, 2007. For the

---

[2] (Doc. No. 42).
[3] (Doc. No. 1).
[4] As discussed in Section IV below, the facts are drawn from the pleadings in this adversary proceeding and in the Debtor's chapter 13 case, viewed through the filter applicable to a motion for judgment on the pleadings.

2

tax year 2000, the IRS assessed $43,344.00 in taxes, interest and penalties based on a "substitute for return" filed by the IRS on September 1, 2003, a portion of which was abated after the Debtor filed an "amended" 2000 tax return on July 16, 2007.  Additionally, none of the Debtor's tax returns for the tax years 2008, 2009, 2010, or 2011 had been filed by the IRS filing deadline for each corresponding tax year, or before the Debtor filed his bankruptcy petition.[5]

### B. The Bankruptcy Proceeding

On June 19, 2012, the Debtor filed a voluntary Chapter 13 petition (the "Petition") with this Court (Case Number 12-11983-BAH, the "Main Case").  Shortly after filing the Petition, but after the IRS deadline to file returns for each tax year had passed, the Debtor filed late returns for the 2008, 2009, 2010, and 2011 tax years in June and July of 2012.

The Debtor filed his initial plan on July 2, 2012, which was later amended on August 16, 2012 (the "Plan"),[6] proposing to pay an estimated priority claim for the tax years of 2008-2011 to the IRS, but paying no interest on that priority claim during the pendency of the Plan.[7]  The Plan did not propose any specific non-conforming special plan provisions, and proposed to pay 15.01% of all allowed general unsecured claims.

The IRS filed an amended proof of claim on October 12, 2012 ("Claim 4-2") in the total amount of $278,309.42.  Claim 4-2 consisted of a secured claim for tax year 1996 in the amount of $15,555.00; an unsecured priority claim for tax years 2008-2011 in the amount of $48,873.30; and a general unsecured claim for the tax years of 1996, 1997, 2000, 2004, 2005 and 2007 (including pre-petition penalties on both the priority claims and the general unsecured claims) in

---

[5] For purposes of convenience, the returns for the tax years of 1997, 2000, 2008, 2009, 2010, and 2011, where the Debtor did not submit any document intended to be a return until after the IRS deadline to file for each corresponding tax year, are collectively referred to herein as the "Late Filed Returns."
[6] Main Case (Doc. No. 18).
[7] The Plan did not specify what tax years were represented by the priority claim; however, the "Notice of Amendment to Chapter 13 Plan dated 7/2/19" filed with the Plan specified the priority claim was comprised solely of tax liabilities arising from tax years 2008-2011.

the amount of $213,881.12.  As stated in Claim 4-2, the 1997 debt was $45,645.79 ($19,346.00 in tax and $26,299.79 in pre-petition interest); 2000 debt was $25,738.64 ($13,972.00 in tax and $11,766.64 in pre-petition interest).[8]

The Debtor filed an Objection to Claim 4-2 on November 9, 2012.[9]  The IRS neither filed a response nor appeared at the hearing on the Objection.  Consequently, on December 17, 2012, the Court entered an order sustaining the Objection.  Specifically, that Order provided that the claim for the 1996 tax year in the amount of $15,555.00, which was filed as a secured claim, be treated as a general unsecured claim; and that both the unsecured priority claim in the amount of $48,873.30 (the "Priority Claim") and the general unsecured claims of $229,436.12 (which included the 1997 and 2000 tax years) (the "General Unsecured Claim") be paid according to the terms of the Plan.[10]

The Debtor completed the Plan, resulting in the Court entering its customary Order of Discharge on August 23, 2017.  That order states that certain debts were not discharged, including certain types of taxes specified in 11 U.S.C. §§ 507(a)(8)(C), 523(a)(1)(B) or 523(a)(1)(C) to the extent not paid in full under the plan.

The Chapter 13 Trustee's Final Report and Accounting, filed upon completion of the Plan on October 3, 2017, stated that the Priority Claim had been paid in full through the Plan, and that payments in the amount of $42,624.67 were made through the Plan towards the IRS's General Unsecured Claim.

The Debtor's case was closed on December 5, 2017.

---

[8] The Debtor complains that Claim 4-2 did not specifically designate whether any of the liabilities stated therein were excepted from discharge.  However, the official Proof of Claim form used by the IRS neither required nor provided for any such designation.
[9] (Main Case Doc. No. 37).
[10] (Main Case, Doc. No. 45).

4

### C. Post-Discharge

On January 8, 2018 the IRS sent the Debtor CP504 notices seeking payment of an "amount owed" plus interest charges for the tax years 1997 and 2000. The IRS also sent the Debtor CP504 notices seeking payment for the years 2008-2011 (the "2008-2011 Notices").[11] The notice for 2008 stated: "our records show you have unpaid taxes for the tax year ending December 31, 2008," informed the Debtor that he was on notice of the IRS's intent to "levy against his property or rights to property," listed the "amount you owed" as $1,614.88 and "interest charges" of $4.97, and had an asterisk and a blank line after the words "amount due immediately", with a toll free phone number for the Debtor to call "for penalty and interest charges and remaining balance." See Objection (Ex. 1). The notices for the tax years of 2009, 2010 and 2011 contained the identical "unpaid tax" language, listed the amount owed for each year, and the "amount due immediately" line on showed the same blanks and asterisks. Id. (Exs. 2-4).[12]

On July 6, 2018, the Debtor moved to reopen the Main Case to allow him to file an adversary proceeding against the IRS to allege violations of his discharge under 11 U.S.C. §524(a)(2) relating to the 2008-2011 Notices, and to request an order declaring that the debt the 2008-2011 Notices sought to collect was discharged. The Debtor's motion was granted. On July 9, 2019, after the Main Case had been reopened but before an adversary complaint had been filed, the IRS sent a CP508-C notice to the Debtor stating the tax debt for the tax years 1997 and 2000 was seriously delinquent.

---

[11] The CP504 notices sent to the Debtor seeking payment for the tax years of 1997 and 2000, as well as the 2008-2011 Notices, will be referred to collectively as the "Post Discharge Notices."

[12] Copies of the 1997 and 2000 CP504 notices are not part of the record, so the specific language of those notices is not fully known.

On August 22, 2018, the Adversary Complaint was filed, alleging the Post Discharge Notices violated 11 U.S.C. § 524(a)(2).[13]  The Adversary Complaint sought declaratory judgment that the debt that the Post Discharge Notices sought to collect was discharged, and requested damages (including emotional distress damages) for violation of the discharge injunction, as well as sanctions in the form of attorney's fees and costs.

On November 11, 2018, the IRS brought a civil action, Case Number 1:18-cv-01011 in the United States District Court for the District of New Hampshire (the "Civil Action") against the Debtor, seeking to reduce to judgment the tax liabilities for the tax years of 1997 and 2000.[14]  The Civil Action is currently stayed.[15]

On December 20, 2018 the Defendant filed the Motion.

## IV.  LEGAL STANDARD

A motion for judgment on the pleadings is governed by Rule 12(c) of the Federal Rules of Civil Procedure, which is made applicable in bankruptcy proceedings by Bankruptcy Rule 7012.  Rule 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  The standard for evaluating a Rule 12(c) motion is essentially the same as that for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim.  Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citation omitted); Best v. Nationstar Mortg. LLC (In re Best), 540 B.R. 1, 7 (B.A.P. 1st Cir. 2015) (citation omitted).  Under both Rule 12(b)(6) and Rule 12(c), "the pleadings taken in the light most favorable to the non-movant must establish a plausible claim."  Rivera Mercado v.

---

[13] The IRS in its Motion states that the discharge criteria for the tax years 2004, 2005 and 2007 were met and the taxes, penalties, and interest were abated in full for those years.  The IRS also states that the additions to tax, penalties and interest for the years 1996, 1997 and 2000 were abated but the taxes due for those years were not.  As the Adversary Complaint and the Motion do not address the 1996 tax year and any taxes allegedly remaining due, it is not discussed further herein.

[14] The Civil Complaint (Complaint, Civil Doc. No. 1) only addresses the tax years of 1997 and 2000 and makes no mention of the 2008-2011 tax years.

[15] (Civil Doc. No. 10).

Banco Popular de Puerto Rico (In re Rivera Mercado), 599 B.R. 406, 416–17 (B.A.P. 1st Cir. 2019) (citation omitted).

When considering a motion for judgment on the pleadings, a bankruptcy court is entitled to examine the pleadings, exhibits attached to the pleadings, and any documents sufficiently referenced in the pleadings.  Best, 540 B.R. at 8.  Documents attached to the answer are considered part of the answer and may also be considered.  Fed. R. Civ. P. 10(c).  A bankruptcy court may take judicial notice of docket entries in the main bankruptcy case.  LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) (bankruptcy court may take judicial notice of its own docket).

"[A] motion for judgment on the pleadings cannot be granted if a genuine issue of fact is presented."  Foley v. Cmty. Oil Co., 64 F.R.D. 561, 562 (D.N.H. 1974).  For purposes of a motion for judgment on the pleadings and the application of Rule 12(c), all well-pleaded material allegations of the opposing party's pleadings are taken as true, and all allegations of the moving party which have been denied are taken as false.  Id. (citing 2A Moore's Federal Practice § 12.15, p. 2343 (2d ed. 1968)).  Judgment may be granted for the movant when the "undisputed factual record expanded by the defendant's answer is used to determine the merits of the prayers for relief."  Berry v. Mass. Dept. of Rev. (In re Berry), 2016 WL 3676528, at *2 (Bankr. D. Mass. Jun. 30, 2006).

**V.  DISCUSSION**

There are three issues this Court must address in deciding the IRS's Motion: whether the debts arising from the Late Filed Returns are excepted from discharge injunction under 11 U.S.C. § 523(a)(1)(B); whether the 2008-2011 Notices attempted to collect something other than interest accrued on the Priority Claim during the pendency of the Plan in violation of Section

7

524(a)(2); and whether the Debtor's claims for attorney's fees and costs, damages including emotional distress damages, and sanctions are barred by the doctrine of sovereign immunity.[16]

> **A. The Late Filed Returns debts are excepted from the discharge injunction set forth at 11 U.S.C. § 524(a)(2) pursuant to the First Circuit Court of Appeals decision of <u>Fahey v. Mass. Dept. of Revenue (In re Fahey)</u>, 779 F.3d 1, 4-5 (1st Cir. 2015).**

In its Motion, the IRS argues that the Post Discharge Notices and the amounts sought thereunder do not violate the discharge injunction as set forth in 11 U.S.C. § 524(a)(2), as they are excepted from discharge as a matter of law pursuant to 11 USC § 523(a)(1)(B). The IRS argues the Late Filed Returns are in violation of the so-called "one day late rule" articulated by the First Circuit Court of Appeals in <u>Fahey v. Mass. Dept. of Revenue (In re Fahey)</u>, 779 F.3d 1, 4-5 (1st Cir. 2015), and that the debts arising from them are excepted from discharge. The IRS has the burden of proving the Debtor's debts to be nondischargeable. <u>In re Ryan</u>, 504 B.R. 686, 700 (Bankr. D. Mass. 2013).

The Debtor admits the Late Filed Returns were untimely and does not contest that under the "one-day late rule" set forth in <u>Fahey</u>, the tax debts from those years are nondischargeable. Instead, the Debtor urges this Court to reconsider <u>Fahey</u>, reject the "one day late rule," and adopt an alternate analysis set forth by the United States Tax Court in <u>Beard v. Commissioner of Internal Revenue</u>, 82 T.C. 766 (1984). The Debtor suggests that if the analysis in <u>Beard</u> were

---

[16] The Debtor makes two additional arguments in the Adversary Complaint: 1) the IRS does not always collect post-petition interest which accrued on priority claims paid in full through a plan and it is acting in a discriminatory manner in collecting that interest from the Debtor; and 2) the IRS should have labeled or otherwise designated the 1997 and 2000 tax liability as "nondischargeable" in Claim 4-2. <u>See</u> Adversary Complaint at ¶¶ 17 and 21. The Defendant addresses both issues, arguing that the Debtor points to no legal authority for his argument regarding the IRS's alleged inconsistent collection practices, and that courts in the First Circuit have found that there is no requirement for the IRS to designate a tax debt as nondischargeable in a proof of claim. Motion at 12 (citing <u>In re Ryan</u>, 504 B.R. 686 (Bankr. D. Mass. 2013) (holding that the IRS had no duty to show that the returns were unfiled or nondischargeable and the debtor could have commenced an adversary proceeding to determine the dischargeability of the tax debt pursuant to 11 U.S.C. § 523(a)(1)(B) at any time during the pendency of his case)). The Court agrees with the Defendant and notes the Debtor does not address either issue or provide any contrary supporting legal authority in his Opposition.

adopted, the Late Filed Returns may qualify as returns and, if so, any debts relating to the corresponding tax years were discharged.

Pursuant to 11 U.S.C. § 524(a)(2) a discharge under chapter 13 "operates as an injunction against the commencement or continuation of an action…to collect, recover or offset any [discharged] debt as a personal liability of the debtor…". "[T]he discharge injunction prohibits collection only with respect to dischargeable debts and does not apply to nondischargeable debts." United States v. Monahan (In re Monahan), 497 B.R. 642, 649 (B.A.P. 1st Cir. 2013) (citing State of Fla. Dep't of Revenue v. Diaz (In re Diaz), 647 F.3d 1073, 1088 (11th Cir. 2011) (internal citation and quotation omitted)).

Section 524(a)(2) is subject to several exceptions rendering a debt nondischargeable and not subject to the injunction. 11 U.S.C. § 523(a)(1) determines whether unpaid taxes are dischargeable in bankruptcy, and provides in relevant part:

> (a) A discharge under section . . . 1328(b) of this title does not discharge an individual debtor from any debt—
>
>     (1) for a tax or a customs duty—
>     ...
>         (B) with respect to which a return, or equivalent report or notice, if required—
>             (i) was not filed or given; or
>             (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition[.]

11 U.S.C. § 523(a)(1)(B)(i)-(ii).

The First Circuit in Fahey considered Section 523(a)(1)(B) in relation to an untimely filed state tax return in conjunction with the "hanging paragraph" denoted as section 523(a)(*) [17]

---

[17] The Fahey opinion used the "*" to reference the "hanging paragraph" following subsection 532(a)(19). See Fahey, 779 F.3d at 4.

9

(located at the end of section 523(a)) and its definition of a "return" to determine what qualified as a "return" for the purposes of Section 523(a)(1)(B).  Fahey, 779 F.3d at 3.

Section 523(a)(*) defines "return" as follows:

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

Reading Section 523(a)(1)(B) together with the definition of "return" in Section 523(a)(*), the Fahey Court found that a tax return filed late under applicable law did not qualify as a "return" and therefore was exempt from discharge under Section 523(a)(1)(B).  Fahey, 779 F.3d at 3-4.

On the other hand, Beard v. Commissioner of Internal Revenue, decided in 1984 by the United States Tax Court, set forth the following elements for determining if a document qualifies as a return for Section (a)(1)(B) purposes: 1) it must purport to be a return; 2) it must be executed under penalty of perjury; 3) it must contain sufficient data to allow calculation of tax; and 4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law. Beard, 82 T.C. at 248.  The fact that Beard was decided in 1984 is significant here for two reasons.  First, it was decided before the 2005 amendments (colloquially known as "BAPCPA") to the Bankruptcy Code, which added the "hanging paragraph" of Section 523(a)(*); and second, it was decided before (and expressly distinguished by) Fahey.  In Fahey, after considering the pre-BAPCPA interpretation of Beard, the First Circuit held:

> Against this background, it is more plausible that Congress intended [in BAPCPA] to settle the dispute over late filed tax returns against the debtor (who both fails to pay taxes and fails to file a return as required by law) than it is that Congress sought to preserve some version of the four-pronged Beard test by using language that has no reference to that case law and that certainly suggests no four-pronged definition.  Particularly noteworthy is the fact that Congress's chosen

10

> test called for satisfying the filing requirement of applicable law, and not making an "honest attempt" to do so.

Fahey, 779 F.3d at 10 (footnote omitted).

This is not the first time that a bankruptcy court in this circuit has addressed a debtor's request to reconsider Fahey and adopt the analysis in Beard.  See e.g. Boudreau v. R.I. Div. of Taxation (In re Boudreau), 562 B.R. 853, 860 (Bankr. D.R.I. 2017) (holding that the bankruptcy court was "duty bound" to follow the "one day late rule" holding of Fahey when finding that a state tax return that was not timely filed under applicable law was not dischargeable, because the Fahey opinion was binding First Circuit precedent).  Like the debtor in Boudreau, the Debtor here disagrees with the holding in Fahey, and prefers an alternate analysis that would render his debts under the Late Filed Returns discharged, and any action to continue to collect on those discharged debts in violation of the discharge injunction.  The Debtor, however, offers no other reason for this Court to not follow Fahey aside from the reasoning set forth in the Beard opinion itself, which has already been considered and rejected by the First Circuit in Fahey.

This Court is also bound by First Circuit precedent.  Here, each of the Late Filed Returns was filed at least one day after the IRS tax return deadline for each corresponding tax year. When applying Fahey, each of the Late Filed Returns must be treated as "unfiled returns" under Section 523(a)(1)(B), and the underlying debts are therefore excepted from discharge and not subject to 11 U.S.C. § 524(a)(2)'s discharge injunction.

### B. An issue of fact exists as to whether the 2008-2011 Notices violate 11 U.S.C. § 524(a)(2) as it is unclear if they are an attempt to collect a debt other than post-petition interest for the tax years 2008-2011.

The application of Fahey ends the controversy of whether the Late Filed Returns were subject to the discharge injunction, and for the purpose of the 1997 and 2000 tax years, the

11

analysis is complete.  In relation to the 2008-2011 Notices, however, a dispute still exists regarding the scope of the debt the IRS seeks to collect.

The parties agree that when priority taxes arise under section 11 U.S.C. § 507(a)(8)(C), and a plan does not pay 100% of the post-petition interest that accrued on those claims during its pendency, any remaining post-petition interest is excepted from discharge pursuant to 11 U.S.C. § 1328(a)(2).[18]  Here, the Priority Claim was paid in full through the Plan, but no accrued interest was paid on that claim.  Thus, the contested issue is not whether the post-petition interest on the Priority Claim is subject to the discharge injunction; instead, it is the nature of the debt the 2008-2011 Notices intend to collect.

The Debtor argues that the language of the 2008-2011 Notices that states "our records show you have unpaid *taxes* for the tax year ending in [2008, 2009, 2010 and 2011]" (emphasis added) implies that the 2008-2011 Notices attempt to collect something other than post-petition taxes, in violation of the discharge injunction.  Conversely, the IRS does not address this "unpaid taxes" language in its Motion or point this Court to any pleadings, exhibits attached to the pleadings, or any documents referenced in the pleadings that would establish the merits of its claim that the 2008-2011 Notices only seek to collect post-petition interest on the Priority Claim.

Each of the 2008-2011 Notices states that the IRS records show the Debtor has "unpaid taxes."  Although the "amount you owe" line does not specifically state the nature of the liability owed, there is no statement in the 2008-2011 Notices that they are an attempt only to collect the

---

[18] See Objection at 7 (agreeing that the discharge injunction does not bar collection of post-petition interest where a plan was not a 100% plan because post-petition interest would accrue on the claim during the pendency of the bankruptcy, as discussed in Ladona, 2017 WL 2437233 at *3); Motion at 13-15 (citing to United States v. Monahan (In re Monahan), 497 B.R. 642, 647-49 (B.A.P. 1st Cir. 2013) (discussing priority tax claims arising under § 507(a)(8)(C), are treated differently under Section 1328, holding that a debtor must still pay such claim in full without post-petition interest and the debtor remains liable for any unpaid portion of the claim, including any interest that accrues on the claim post-petition).

interest that is exempt from discharge arising from the Priority Claim, or to otherwise clarify the "unpaid taxes" language.

Therefore, a genuine issue of fact exists as to whether the debt the IRS is attempting to collect goes beyond post-petition interest on the Priority Claim (which claim was paid in full through the Plan) for the 2008-2011 tax years violating 11 U.S.C. § 524(a)(2). The IRS's Motion should therefore be granted on a limited basis, i.e. only to the extent that this Court has found that the post-petition interest that accrued during the pendency of the Plan for the tax years 2008, 2009, 2010 and 2011 is excepted from discharge.

### C. The doctrine of sovereign immunity and the Debtor's failure to exhaust his administrative remedies bars the Debtor from seeking emotional distress damages.

The IRS asserts in its Motion that the Debtor's request for attorney's fees, damages, and sanctions are barred by sovereign immunity because the Debtor failed to exhaust his administrative remedies prior to filing suit as required by 26 U.S.C. §§ 7430(b)(1),7433(d)(1), and 26 C.F.R (Treas. Reg.) § 301.7433-2(d), prohibiting his claims for sanctions, punitive damages or emotional distress injuries against the United States. The Debtor does not dispute the IRS's allegation that he did not file an administrative claim for attorney's fees or damages with the IRS prior to initiating this adversary proceeding. Instead the Debtor argues that pursuant to 11 U.S.C. § 105(a), the waiver of sovereign immunity found in Section 106, and 26 C.F.R (Treas. Reg.) § 301.7433-2(a)(1), this Court has the power to determine if the IRS's actions violated the discharge injunction.[19] The Debtor asserts that power also allows this Court to issue a declaratory judgment and award attorney's fees and costs, sanctions, and actual

---

[19] As in its Motion the IRS agrees that the Court has jurisdiction to address dischargeability and has consented to this Court's entry of a final order or judgment on that issue, it will not be further addressed here.

damages including damages for emotional distress for the IRS's alleged violation of Section 524(a)(2), regardless of whether administrative exhaustion occurred.

The Debtor cites to 26 C.F.R (Treas. Reg.) § 301.7433-2(a)(1), which states in relevant part:

> (a) If, in connection with the collection of a federal tax with respect to a taxpayer, an officer or employee of the Internal Revenue Service willfully violates any provision of section 362 (relating to the automatic stay) or section 524 (relating to discharge) of title 11, United States Code, or any regulation promulgated under such provision, the taxpayer may file a petition for damages against the United States in Federal bankruptcy court. The taxpayer has a duty to mitigate damages. The total amount of damages recoverable under this section is the lesser of $1,000,000, or the sum of –
>
> > (i) Actual, direct economic damages sustained as a proximate result of the willful actions of the officer or employee; and
> >
> > (ii) Costs of the action.

26 C.F.R (Treas. Reg.) § 301.7433-2(a)(1).

As an initial matter, the IRS is correct that the First Circuit has conclusively held that sovereign immunity has not been waived under U.S.C. § 106 for purposes of allowing emotional distress damages for willful discharge injunction violations. See In re Rivera Torres, 432 F.3d 20, 31 (1st Cir. 2005) (holding that "sovereign immunity bars awards for emotional distress damages against the federal government under [11 U.S.C.]§ 105(a) for any willful violation of [11 U.S.C.]§ 524, and that immunity is not waived by [11 U.S.C.]§ 106"). As such, the IRS's Motion as it relates to emotional distress damages, is granted.

However, less conclusive is the IRS's argument that the Debtor is not entitled to attorney's fees and costs, actual damages and/or sanctions resulting from the IRS's post-discharge collection activities because he failed to comply with the exhaustion of administrative remedies requirement found in both 26 U.S.C. § 7430(b)(1) (awarding costs and certain fees) and 7433(d)(1) (governing civil damages for certain unauthorized collection actions). While the IRS

14

admits that this issue has not been definitively decided by the First Circuit, it cites to cases such as Kuhl v. United States, 467 F.3d 145, 148 (2d Cir. 2006), for the proposition that administrative exhaustion is jurisdictional in an adversary proceeding seeking attorney's fees, and that failing to exhaust administrative remedies divests this Court of jurisdiction per 26 C.F.R (Treas. Reg.) § 301.7430-1.

Many other courts have "painstakingly" considered the issue of administrative exhaustion with repect to motions for awards of attorney fees, actual damages, and sanctions relating to discharge injunction violations, arriving at various and differing conclusions utilizing different statutory provisions and treasury regulations for their decisions. See In re Langston, 600 B.R. 817, 825 (Bankr. E.D. Cal. 2019) (providing an extensive review of cases addressing this issue from multiple jurisdictions with varying outcomes).  For example, in contrast to the Kuhl case cited by the IRS, the court in In re Graham, No. 99-26549-DHA, 2003 WL 21224773 (Bankr. E.D. Va. Apr. 11, 2003) found that it had jurisdiction to award damages in the form of litigation costs to debtors who alleged IRS violations of § 524, even where they had not exhausted their administrative remedies, holding that: "26 U.S.C. § 7433(e)(2)(A) states that the exclusive remedy for recovering damages for violations of the Bankruptcy Code is to petition the bankruptcy court," and within that section "there is no mention ... of the need to exhaust administrative remedies."  Id. at *2.  The Graham court held that 26 U.S.C. § 7433(e) was "quite clear" that the "bankruptcy court is the *exclusive* remedy for the violation of Bankruptcy Code provisions."  Id. (emphasis in original).[20]

---

[20] See also In re Jha, 461 B.R. 611, 625 (Bankr. N.D. Cal. 2011) (holding that 26 U.S.C. § 7433(e)(2)(A) permits the bankruptcy court to award actual damages without requiring a debtor to exhaust the debtor's administrative remedies); I.R.S. v. Murphy, 554 B.R. 535, 555, n. 31 (D. Me. 2015) (stating that "Congress has recognized in the Internal Revenue Code a role for the bankruptcy court in policing IRS violations of the statutory discharge. It has provided that when a claim is made that an IRS employee has engaged in a willful violation of a section 524 bankruptcy discharge, a taxpayer may seek damages and may make that claim in the bankruptcy court. 26 U.S.C. § 7433(e)"); Nicholson v. Internal Revenue Serv., No. 4:14CV667-MW/CAS, 2015 WL 6152922, at *3 (N.D. Fla. Sept. 15, 2015) (recognizing that the exhaustion requirement of Section 7433(d) imposes a precondition on an award

Here, to the extent the Debtor seeks emotional distress damages, judgment for the IRS is appropriate. However, the remainder of the Defendant's Motion relating to attorney's fees, costs, damages and sanctions is denied as the pleadings, taken in the light most favorable to the Debtor, establish a plausible claim, requiring denial of that part of the motion.

## VI. CONCLUSION

For the reasons set forth herein, this Court orders as follows:

1) The Motion is granted regarding the debts arising from the 1997 and 2000 tax years. The Debtor's income tax liabilities, including interest for the tax years of 1997 and 2000, are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(B).

2) The Motion is granted regarding the 2008, 2008, 2010, and 2011 tax years. The debts arising from those tax years were excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(B) as the tax returns for those years were not timely filed. However, only post-petition interest that accrued during the pendency of the Plan on the Priority Claim remains excepted from discharge pursuant to 11 U.S.C. § 1328(a)(2) and 507(a)(8)(C), since the Priority Claim itself was paid in full under the Plan.

3) A genuine issue of fact exists as to the scope of the debt that the 2008-2011 Notices seek to collect. Therefore, to the extent the Motion relates to whether the 2008-2011 Notices violated 11 U.S.C. § 524(a)(2)'s discharge injunction, the Motion is denied.

4) The Motion is granted in relation to emotional distress damages, as sovereign immunity has not been waived. The remainder of the Defendant's Motion relating to the Debtor's complaint for attorney's fees, costs, actual damages, costs, and sanctions, is denied.

---

of damages but it sets no other limits on a bankruptcy court's authority to issue any order, process or judgment necessary or appropriate to carry out the provisions of the bankruptcy code generally such as awarding sanctions for Section 524 violations).

16

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with this opinion.

ENTERED at Concord, New Hampshire.


Date:   September 27, 2019          /s/ Bruce A. Harwood
                                    Bruce A. Harwood
                                    Chief Bankruptcy Judge